**PANTRY QUEEN FOODS, INC., Plaintiff,**

v.

**LIFSCHULTZ FAST FREIGHT, INC., Defendant-Appellee,**

v.

**D'ALTERIO FOODS CORPORATION, Third-Party Defendant-Appellant.**

No. 86–1057.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 3, 1986.

Decided Jan. 15, 1987.

Eric Schmalz, Palatine, Ill., for third-party defendant-appellant.

Scott W. Hoyne, Crotty & Hoyne, Chicago, Ill., for defendant-appellee.

Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Pantry Queen Foods loaned some pasta machines to D'Alterio Foods and later asked for their return. Pantry Queen hired Lifschultz Fast Freight to cart the machines from New York to Chicago in May 1981. The "shipper's load and count" bill of lading shows that D'Alterio loaded four machines onto Lifschultz's truck. When the machines were unloaded, Pantry Queen complained that one was missing. Lifschultz's driver verified that the shipment was one machine short. Pantry Queen filed this suit under the Carmack Amendment, 49 U.S.C. § 11707, to recover for the missing machine. Lifschultz made D'Alterio a third-party defendant, contending in its complaint that "[i]f PANTRY QUEEN did not receive all of the sections of machinery from D'ALTERIO it claims it was entitled to receive, then the failure to receive said machinery was a direct and proximate result of the failure of D'ALTERIO to properly count and load said machinery onto LIFSCHULTZ' trailer." To this D'Alterio replied, in an answer filed January 21, 1983: "Third Party Defendant denies each and every allegation of [this paragraph of] the third party complaint".

This denial has produced a novelty. The district court awarded attorneys' fees against D'Alterio for not winning the case fast enough. D'Alterio in fact loaded four machines, and Pantry Queen got all four. It withheld a pasta laminating machine, claiming the machine as security for a debt it asserted Pantry Queen owed. The laminating machine sat in D'Alterio's plant throughout the litigation. On the eve of trial in August 1984 counsel for D'Alterio informed the other parties and the court about the laminating machine's whereabouts. Pantry Queen doggedly insisted that it was still entitled to recover, on the ground that the driver had certified "one piece short" on the consignee's copy of the bill of lading. The district court granted summary judgment for Lifschultz, because according to the court uncontradicted evidence now showed that D'Alterio had shipped and Pantry Queen had received "three" machines, and that a "shipper's load and count" bill—the only basis on which Pantry Queen continued the case—is not a sufficient basis for recovery against a carrier when the evidence shows that the shipping count is wrong.

The district court invited Lifschultz to move for attorneys' fees and held an evidentiary hearing to determine why it took so long to resolve the case. D'Alterio's New York counsel, asked why he had withheld the information, testified that "no one ever asked"; had anyone done so, counsel stated, he would have answered straightway. (The judge called this "the most unusual testimony in the history of the court.") D'Alterio's Illinois counsel, who also knew about the laminating machine, states that he did not reveal the information because he did not know that the laminating machine was the one Pantry Queen wanted.

Counsel's assertion that he was confused has some support, because everyone has been confused throughout this litigation. The complaint describes the machines as the *"four"* sections of a single larger machine, states that Lifschultz delivered only three, and does not say which one is missing. Thus D'Alterio might have supposed that the problem was the loss in transit of one of the four segments listed on the bill

of lading, rather than the failure to ship a fifth. Although the endorsement on the bill of lading states "Dough Machine DDLDH 4–1 missing", the bill did not show that a machine by that number had been shipped. The driver's endorsement does not say how many machines reached Pantry Queen. Subsequent statements by Pantry Queen aver that a "DPIT–3 machine" or "indexer" was missing. Pantry Queen's president, in a deposition, variously described the missing section as a "dough" or "laminating" machine and asserted that "DPIT–3" is the wrong number, but he did not supply the right number. The machine in D'Alterio's hands was a "DDLDH–4 Laminating Machine". It is understandable that attorneys, unskilled in the pasta business, would not know what Pantry Queen was missing and whether a DDLDH–4 machine filled the bill. The district court itself was confused—and so are the attorneys on appeal—because almost without exception they follow the complaint and assert that D'Alterio shipped, and Pantry Queen received, only three of the four sections of a machine, despite the initial count. The district court granted summary judgment on the ground that the bill of lading was in error. But a photograph of the load shows four segments being shipped, confirming the bill of lading. There was one "missing" all right, but the missing machine was a fifth rather than a fourth segment. Everyone has been confused from the beginning of this case.

The district judge concluded that the suit by Pantry Queen was "specious" because it knew or should have known that D'Alterio was withholding the DDLDH–4 machine under a claim of right. It therefore knew that it could not rely on a shipper's load and count bill of lading to recover from Lifschultz. (It also knew, so far as we can tell, that it received all four of the segments listed on the bill of lading.) The judge ordered Pantry Queen to contribute $31,000 toward the attorneys' fees of Lifschultz and its insurance carrier; Pantry Queen did not appeal.

The judge ordered D'Alterio to pay another $31,000 in attorneys' fees, finding "a combination of mistakes, indifference to the litigation, and negligent failure to inquire into facts which becoming involved in the lawsuit should have prompted." The court did not conclude that D'Alterio or its lawyers acted in subjective bad faith but thought them "negligent in their failure to ascertain the underlying facts". The negligence injured Lifschultz, which the court portrayed as a bystander to a dispute between Pantry Queen and D'Alterio about who was entitled to possess the DDLDH–4 machine. Because Lifschultz was caught in the middle, the court reasoned, it was entitled to recompense. The court did not refer to any statute or rule as authority to award attorneys' fees, and the opinion does not cite any case. Lifschultz has abjured reliance on 28 U.S.C. § 1927, which might have supported the award, see *In re TCI Ltd.*, 769 F.2d 441, 445–50 (7th Cir.1985). We must decide whether there is any other source of authority.

One might be Fed.R.Civ.P. 11. The version of Rule 11 in force when D'Alterio filed its answer to the complaint stated that an attorney's signature on a pleading certifies that "there is good ground to support [the pleading]; and that it is not interposed for delay." It allowed a court to take "disciplinary action" for "a wilful violation of this rule". Courts were reluctant to impose sanctions for the filing of unsupported documents under this language and did so only on a showing of subjective bad faith. *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1166 (7th Cir.1983); *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir.1980). The district court did not find subjective bad faith; it found only negligence. A new version of Rule 11, effective August 1, 1983, changed the standard to one of objective reasonableness. *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986). The new Rule 11 also requires that the attorney's belief in the propriety of the filing be "formed after reasonable inquiry [and] well grounded in fact". There is no evidence that D'Alterio's lawyers undertook any inquiry, let alone a "reasonable" one, before filing an answer asserting (by

denying the opposite assertion) that D'Alterio had shipped a missing segment. The new Rule 11 therefore might support the imposition of sanctions, if it applied. See *Brown v. Federation of State Medical Boards*, 800 F.2d 168 (7th Cir.1986).

■ Because the amended Rule 11 did not go into force until August 1, however, it does not apply. The Supreme Court's order promulgating the 1983 amendments states that they "shall govern all civil proceedings thereafter commenced and, insofar as just and practicable, in proceedings then pending." This is sufficient ground to apply the new Rule 11 to any filing after August 1 in a pending case. It does not, however, support the application of the Rule to prior filings. *Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581 (11th Cir.1986). The new language was designed to deter improper filings and to induce lawyers to do better research. As the Advisory Committee's notes state: "The word 'sanctions' in the caption ... stresses a deterrent orientation in dealing with improper pleadings, motions or other papers." A rule cannot deter conduct that is completed before the rule's adoption; people cannot comply with rules that do not exist. And a deterrence argument for sanctions in a case such as this is weak. D'Alterio had no reason to prolong the litigation. Its own interest was to get the case over with as cheaply as possible. It had to pay its own lawyers. We have not found any case in which Rule 11 was used to penalize a party for not winning quickly or cheaply enough. Section 1927 has this function, as the Supreme Court emphasized in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759–61 & n. 6, 100 S.Ct. 2455, 2460–61 & n. 6, 65 L.Ed.2d 488 (1980), but § 1927 is not in issue here.

■ Perhaps, however, D'Alterio had an obligation to update its pleadings after August 1 in conformity with the new Rule 11. Yet the new Rule 11 does not require revisions of pleadings to conform with newly discovered information. The Advisory Committee's notes discourage resort to hindsight to assess the adequacy of filings:

"The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information", and so on. Cf. *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986) (court must "look at the situation which existed when the paper was filed"). The Advisory Committee did not hint that the Rule requires a lawyer to continue his investigation after filing the paper and to update his pleadings in light of any new findings. *Oliveri v. Thompson*, 803 F.2d 1265, 1274–75 (2d Cir.1986), holds, and we agree, that Rule 11 does not require the updating of papers that were not subject to sanctions when filed.

There is an implicit obligation to update because Rule 11 applies to all papers filed in the litigation. Each filing must reflect the results of reasonable inquiry. Rare is the case that goes from complaint and answer to trial without an intervening filing. Updating occurs in the course of these filings. Papers in discovery also are covered by Rule 26(g), and affidavits used in moving for summary judgment are covered by Rule 56(g). A court has ample support for sanctions when new filings do not reflect the full picture. See also Jeffrey A. Parness, *Groundless Pleadings and Certifying Attorneys in the Federal Courts*, 1985 Utah L.Rev. 325, 341–42. D'Alterio's lawyers were not entitled to continue to assert that D'Alterio shipped the machine after discovering that it had not. Counsel also must update disclosures in discovery, on learning that the initial disclosure was not fully responsive—a duty that has never been applied to pleadings.

■ D'Alterio's lawyers did not continue to assert that D'Alterio shipped the fourth segment. In February 1984 Lifschultz filed a motion for summary judgment, attaching an affidavit of D'Alterio's presi-

dent dated May 1983. The affidavit stated that D'Alterio had shipped to Pantry Queen the four segments listed on the bill of lading: a DCDC–4 Cooker Blancher, a DCCB–4 Immersion Conveyor, a DDPQ–3 Quencher, and a DPIT–3 Indexer. Responding to Pantry Queen's position that the missing piece may have been a ravioli machine, the affidavit stated: "No machine similar in size and shape to the machine depicted in [Pantry Queen's photograph] was delivered to LIFSCHULTZ". The affidavit continues: "No one delivered a DDLDH–4 Laminating Machine ... to LIFSCHULTZ.... No DDLDH4–1C Dough Machine was delivered to LIFSCHULTZ". The affidavit narrated the meaning of an attached photograph showing the four segments being loaded. With this affidavit D'Alterio correctly denied giving Lifschultz the machine Pantry Queen said Lifschultz had received and lost. The affidavit did not state that D'Alterio still had Pantry Queen's DDLDH–4 machine in its possession. The omission is baffling, but the affidavit corrects any factual mistake in the answer to the complaint and takes Rule 11 out of this case.

The case therefore presents a problem under the American Rule: unless the litigation gives rise to a fund or is governed by a fee-shifting statute, each side bears its own attorneys' fees unless the losing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons". *F.D. Rich Co. v. United States*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). See generally *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). D'Alterio is not the losing party, and the district judge did not find that it acted wantonly, oppressively, vexatiously, or in bad faith. The district court did not even find that D'Alterio took an objectively frivolous position, which might allow an award of fees under the rationale of *Roadway Express*, 447 U.S. at 764–67, 100 S.Ct. at 2463–64, 65 L.Ed.2d 488 (discussing the powers of courts to require the orderly conduct of pending litigation). D'Alterio's position was not frivolous, it was correct.

Doubtless D'Alterio was thoughtless and negligent, as the district court found. D'Alterio should have alerted the court and opposing counsel to the DDLDH–4 machine sooner than it did. But negligence is not enough. The American Rule stated in *F.D. Rich* and *Alyeska* requires more. There are middle grounds between the American Rule and the British Rule (under which awards to prevailing parties are automatic), but these middle grounds are creatures of statute. The Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (awards against the United States unless the government's position is "substantially justified") is one, Rule 11 another. None of the statutory middle grounds applies here, and *Alyeska* tells courts not to create new middle grounds on their own.

The position of the district court implies that a party with a winning case is required not only to move for summary judgment but also to support the motion well enough to prevail. No rule requires a motion for summary judgment, however; a defendant may elect to prove its case at trial unless the record demonstrates the sort of oppressive, bad-faith conduct that justifies fees under the American Rule. *If* (a big if) any reasonable lawyer for D'Alterio should have known that the DDLDH–4 machine was the one in dispute, then failure to disclose the presence of the machine in D'Alterio's plant *could* have shown bad faith. Lifschultz hinted darkly in its brief and at oral argument that the case was a set-up, an effort to get Lifschultz to pay for the machine and enable Pantry Queen and D'Alterio to settle their private debt. If this were so, attorneys' fees would be the least of the available sanctions. Sanctions might also be appropriate if D'Alterio's lawyers tried to prolong the litigation to run up fees, or if D'Alterio tried to lay low in the belief that this would compel Lifschultz to bear the full costs of the defense of their common interests. D'Alterio's support of Lifschultz's motion for summary judgment, and ultimate proffer of the whereabouts of the DDLDH–4 machine, are inconsistent with a dastardly plot

to pin the blame on Lifschultz, however, and the district court did not find that D'Alterio acted for any other ulterior reason.

Our legal system is adversarial, not inquisitorial, and parties are entitled to the strategic advantage of information to which the other side has not sought access. See *Celotex Corp. v. Catrett*, — U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (White, J., concurring) ("A [party] need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery rules or by court order."). D'Alterio has not argued that it kept information secret to gain any legitimate adversarial advantage; it had no reason to hide anything from Lifschultz. This shows, however, only that D'Alterio incurred needless legal costs for itself, not that it litigated in bad faith. The district court did not find that D'Alterio was playing games with the judicial process. The record reeks of confusion among counsel for Lifschultz and D'Alterio and even the district judge. Pantry Queen launched this case into confusion that never abated when it contended that it had received only three machines and neglected to identify which of the four listed on the bill of lading was missing. Confusion of this sort is deplorable but not the same as bad faith.

■ The district court found Pantry Queen's complaint "specious". It was. Pantry Queen was trying to get Lifschultz to pay for a machine that it knew D'Alterio still possessed, seizing on the mysterious notation of the driver that the shipment was "short" a piece that was not even listed on the bill of lading. The district court could and should have required Pantry Queen to bear all of Lifschultz's fees, but the court did not, and Lifschultz did not appeal.

■ Lifschultz may not recover from D'Alterio on account of negligence. We have expressed doubt that Lifschultz has a case under the bad-faith exception to the American Rule. Yet because confusion has reigned supreme in this litigation, there is a possibility that we, too, have overlooked something important. Lifschultz and the district judge waded through this bog, and perhaps they can support the award on grounds other than those we have canvassed. It is therefore prudent to remand the case to allow Lifschultz to show, if it can, that an award is proper under the American Rule and its traditional exceptions. Any further proceedings on appeal will return to this panel.

Vacated and Remanded.

RIPPLE, Circuit Judge, concurring in part and dissenting in part.

I join my brothers in that part of the court's judgment which remands this case for further consideration with respect to the imposition of sanctions under the so-called "American Rule" and its traditional exceptions. I would also permit the district court to reassess the record and to consider once again the imposition of sanctions under Rule 11.

The court's broad-brush treatment of the applicability of Rule 11 is disturbing. Particularly disturbing is the court's failure to recognize that the rule is designed to redress more than harm to individual parties. It is also designed to curb the significant trauma inflicted on the judicial system when judges must deal with pleadings and documents which are not well-founded in law or in fact. As the court states, our litigation system is adversarial, not inquisitorial. However, we abandoned long ago the primitive notion that the adversary system of civil litigation was a game of hide-and-seek where litigation can be unreasonably protracted and a busy district court's time wasted because "no one ever asked." Maj. op. at 452. A party can be sanctioned "for not winning quickly or cheaply enough," maj. op. at 454, when its affirmative representations have caused the court to needlessly continue litigation which, if the party had lived up to its obligation, would have been terminated. Pleadings play a unique role in litigation. They present the basic theory of the litigant and

determine the scope of the discovery process and of the trial. When pleadings are misleading, the course of the subsequent proceedings will necessarily be misleading—and wasteful. Rule 11 was designed to curb such an abuse and nothing but the court's *ipse dixit* prevents it from fulfilling that role.

The court also fails to recognize that misrepresentations violative of Rule 11 need not take the form of blatant lies. Half-truths can be just as pernicious and, indeed, because of their subtlety, more burdensome on the busy trial judge who, in a day's work, must shift attention among many matters. While, as the court points out, the record before us is not clear, the trial judge may well have ample grounds for his conclusion that the failure of D'Alterio to make careful inquiry with respect to the facts caused a needless waste of time for the litigants and the court.

Certainly, in determining whether sanctions are appropriate, a district judge must " 'avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.' " Maj. op. at 454 (quoting Advisory Committee Notes). However, the experienced district judge—and Judge McGarr certainly is within that category—who has lived with the litigation and worked with the lawyers throughout the pretrial stages of the litigation is certainly capable of making such a judgment. Once that judgment is adequately set forth on the record, a reviewing court should, I respectfully suggest, give substantial deference to that judgment. Accordingly, I would permit the district judge to determine whether D'Alterio, by failing to make prompt and adequate inquiry, unnecessarily prolonged this litigation.

Rule 11's birth was not an easy one. We should be careful—much more careful than the court is today—before we limit its utility in curbing abuses which delay deserving litigants in receiving their day in court.