**Claudette JOSEPH and Stanley Joseph, Jr., Plaintiffs,**

v.

**UNITED STATES of America and Joseph G. Mraz, III, Defendants.**

**Civ. No. 87–0201.**

United States District Court, D. Hawaii.

May 10, 1988.

On Motion to Alter or Amend Order July 11, 1988.

Bays Deaver Hiatt Kawachika & Lezak, Jerry Hiatt, Craig K. Shikuma, Honolulu, Hawaii, for plaintiffs.

Daniel Bent, Philemina Jones, U.S. Attys. Office, Honolulu, Hawaii, for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS AND DENYING DEFENDANT'S MOTION FOR SANCTIONS

KAY, District Judge.

Plaintiff's Motion for Attorneys' Fees and Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure was heard on February 23 and 24, 1988 before this court during the trial of this matter, Jerry M. Hiatt and Craig K. Shikuma appearing on behalf of Plaintiffs and Philemina M. Jones appearing on behalf of Defendant United States of America. The court, having considered the arguments of counsel, the record, and the affidavits and memoranda filed in regard to this motion, finds as follows:

Plaintiffs' motion for sanctions is based on Defendant's assertion of the defense of contributory negligence and its refusal to concede liability throughout the course of this lawsuit. Plaintiffs contend that the evidence regarding Defendant's liability was clear from the outset of this case, and that Defendant's denial of liability in its pleadings and papers filed with this court constitutes a violation of Fed.R.Civ.P. 11, in that such a position is not well grounded in fact and could not be asserted in good faith following a reasonable inquiry.

Prior to Defendant's filing of its answer to Plaintiff's complaint on May 18, 1987, Defendant had in its own records and files extensive evidence that PFC Joseph G. Mraz, III ("Mraz") was negligent in causing the two truck accident on September 3, 1985, which is the subject of this lawsuit, and that Mraz's negligence was imputed to Defendant. Plaintiffs' administrative claims were filed with the Naval Legal Service Office on January 27, 1986, over a year before the complaint was filed in this case, giving Defendant abundant opportunity to review the evidence regarding Plaintiffs' claims. That evidence includes, among other things:

a. An Investigation Report of Vehicle Accident ("Investigation Report"), which was submitted by Charles Smith, Guard Company, Lualualei on September 5, 1985. The Investigation Report provided that Mraz was driving between 40 and 50 m.p.h. when he first noticed Plaintiff Stanley Joseph, Jr.'s ("Mr. Joseph") vehicle. The Investigation Report also states that it was daylight and clear at the time of the accident, that the road conditions were dry with no defects, and that neither driver's vision was obscured.

b. The Incident/Complaint Report ("Tilghman Report"), which was prepared by AOC Diann D. Tilghman ("Tilghman") and submitted by her to the Commanding Officer, Marine Barracks, Hawaii on September 18, 1985. Tilghman inspected the accident site shortly after the accident had occurred. In the Incident/Complaint Report, Mraz was reported as stating that he was traveling southbound on Mississippi Road between 40 to 50 m.p.h. It is also reported that Mr. Joseph stated that he was traveling northbound on Mississippi Road at 15 to 20 m.p.h. when he noticed Mraz's vehicle approaching at a high rate of speed, and that he pulled his truck off the road as far as he could and stopped. Tilghman concluded that Mraz was driving at 43 m.p.h., at a minimum, prior to impact. Tilghman also noted that the weather conditions were dry and clear, that there were no defects in Mississippi Road, and that it was daylight at the time of the accident.

c. On October 23, 1985 First Lieutenant Edward M. McCabe submitted his JAG Manual Investigation Report ("JAG Report"). The findings of fact of the JAG Report provided, among other things, that:

(1) Mraz was driving at approximately 43 m.p.h.;

(2) that there were no defects on Mississippi Road;

(3) Mr. Joseph was heading northbound on Mississippi Road, and upon hearing Mraz's vehicle approaching pulled his truck to the shoulder of the road and stopped;

(4) Mraz applied his brakes and slid into Mr. Joseph's truck;

(5) Mr. Joseph's truck was struck on the left front quarter panel;

(6) the damage to Mr. Joseph's truck was estimated to be valued at $10,000.00;

(7) at the time of the accident, Mississippi Road was dry and clear of obstructions;

(8) at the time of the accident, the weather was clear with ample daylight.

The opinions of the JAG Report further provided, among other things, that:

(1) Mraz was operating his vehicle in an unsafe manner by exceeding the posted speed limit;

(2) the curve in Mississippi Road did not present a traffic hazard which contributed to the accident;

(3) the accident could have been avoided if Mraz had operated the vehicle in accordance with the posted speed limit;

(4) the accident was due to Mraz's simple carelessness and driving in excess of the posted speed limit;

(5) Mraz was in the performance of official military duties and acting within the scope of his employment at the time of his accident;

(6) Mr. Joseph was likely to file a claim against Defendant for his medical care and the repair of his vehicle;

(7) Mraz was driving at least 15 m.p.h. in excess of the posted speed limit;

(8) Mraz violated Articles 92 and 108, 10 U.S.C. §§ 892, 908 of the Uniform Code of Military Justice ("UCMJ").

The recommendations in the JAG report provided, among other things, that:

(1) Mraz be held responsible for the damage to the government vehicle;

(2) Mraz be charged with violating Articles 92 and 108 of the UCMJ;

(3) should Mr. Joseph file a claim against the U.S. government for his medical care and the repair of his vehicle, such a claim be given favorable consideration.

d. The JAG Manual Report was subsequently endorsed by Commanding Officer W.A. Tilley on October 30, 1985, by Commander Naval Base, Pearl Harbor, C. Paul Ake on November 1, 1985, and by Commander, Marine Corps Bases, Pacific, M.L. Haiman on November 8, 1985.

e. Mraz was subsequently charged with violating Articles 92 and 108 of the UCMJ. Mraz was ordered to forfeit $300.00 per month of pay for two months, was reduced in rank, and was sent to 30 days correctional custody. Further, on January 1, 1986, Mraz was passed over for promotion.

In spite of this evidence, and the absence of any evidence to contradict it, Defendant's answer to Plaintiffs' complaint denies any liability for the accident, and even alleges as an affirmative defense that Mr. Joseph was contributorily negligent.

 Rule 11 imposes a duty not only to read pleadings and papers and affirm that they are correct to the extent of the signer's actual knowledge, but also to conduct a reasonable investigation in order to ascertain whether the pleading is actually supported by the facts. *Golden Eagle Distributing Corp. v. Burroughs Corporation*, 801 F.2d 1531, 1537 (9th Cir.1986); *Thomas v. Capital Security Services, Inc.*, 812 F.2d 984 (5th Cir.1987). In *Thomas*, the court held that the circumstances of the particular case will control, but listed several factors to consider in determining whether an investigation by counsel was adequate. These factors include whether counsel conferred directly with the client and others with knowledge in order to verify the facts, the amount of time available for and the feasibility of independent investigation, the complexity of the issues, and the need for discovery in order to further develop the case. *Thomas*, 812 F.2d at 988.

 In a declaration filed by Defendant's former counsel, Special Assistant United States Attorney Gary L Beaver, it is asserted that at the time of the filing of the answer counsel was not aware of the existence of any reports concerning the accident other than the Tilghman Report. Beaver indicates that he knew of the contents of the Tilghman report, but is unable to state that he actually examined the report. Beaver apparently relied on discussions with Roger Atkins, the Senior Claims Attorney at the Naval Legal Service Office at Pearl Harbor. Beaver did not accept the conclusions contained in the Tilghman report based on the fact that Tilghman was a police officer and not an accident reconstruction expert. Beaver states that the claim that Mr. Joseph was stopped by the side of the road was unsubstantiated, that the physical conditions and layout of the road were unknown to him, and that he had questions about the possible status of Mr. Joseph as a trespasser. Beaver did not, however, take the time to investigate these concerns before filing the answer in this case, and was apparently unable to locate Mraz in order to substantiate the facts contained in the Tilghman Report because Mraz had been reassigned, and the guard company at Lualualei to which he had been assigned at the time of the accident was disbanded. Finally, Beaver asserts that he

was inexperienced in the handling of civil lawsuits, and that the answer to the complaint in this case was among the first he had ever done.

Although a close call, the court is reluctant to find that the investigation conducted by Beaver was unreasonable enough to support an award of sanctions. While ordinarily one would expect that counsel would conduct enough of an investigation to discover any reports prepared by the defendant and to conduct an interview with the defendant's agent involved in the accident, the court notes that the defendant in this case is the United States, an entity which is notably large and departmentalized. Counsel did discuss the case with the Senior Claims Attorney at the Pearl Harbor Naval Legal Service Office. In view of the foregoing, this court does not find that counsel's inquiry was inadequate at the early stages of this litigation, since although the answer to the complaint contradicts the facts as recited in Defendant's own reports and as testified to by Defendant's agent Mraz, it is not entirely improbable that Defendant's counsel might not have immediate access to such within the time constraints of filing an answer to the complaint.

However, even though sanctions are not appropriate based on the facts as known at the time of the filing of the answer to the complaint, the reports which were unknown to counsel before answering the complaint were later obtained, and other evidence was presented which clearly established Defendant's liability in this case. In addition to the reports listed and summarized above, depositions were taken both of the investigators who compiled the reports and of those who were directly involved in the accident, Mraz and Mr. Joseph. In her deposition, AOC Tilghman testified that Mraz was solely at fault, describing the actions of Mraz as "stupid." Mraz's own statement indicates that he was speeding at the time of the accident. At some point soon after the filing of the answer, it must have become apparent to Defendant's counsel that the denial of liability and the assertion of contributory negligence were both entirely unfounded.

Indeed, Beaver states in his declaration that after reading the JAG Report he inquired with the Torts Branch of the Justice Department about admitting liability in this case. He was informed about the procedure for obtaining permission to stipulate, but was discouraged from pursuing the matter. Philemina Jones, who succeeded Beaver as counsel for the defendant in this matter, indicated to the court that she had also sought permission to stipulate to liability, but was denied such. Compliance with Rule 11 does not depend on whether or not counsel is given permission by the client to assert a rational position in its pleadings, and if Rule 11 imposes a duty on counsel to amend pleadings once it becomes apparent that those pleadings are not supported by the facts or law, then Defendant's counsel in this case have failed to comply.

It is not clear whether Rule 11 imposes a duty to revise pleadings and papers when it later becomes apparent that they are unfounded. The Fifth Circuit has held that counsel have a continuing obligation under Rule 11 to review and reevaluate their pleadings. *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783 (5th Cir. 1986); *Thomas v. Capital Security Services, Inc.*, 812 F.2d 984 (5th Cir.1987); *Robinson v. National Cash Register Company*, 808 F.2d 1119, 1127 (5th Cir.1987) ("a document that initially satisfies the requirements of Rule 11 may later turn out to be the basis for Rule 11 sanctions as new facts are discovered which show that there is no longer a good faith basis for the document"). This duty to amend was intended to preclude a "shotgun approach" to pleadings, which, although not sanctionable when initially asserted, could prejudice the opposing party if not withdrawn. *Southern Leasing, supra*, at 788.

Other circuits have held that Rule 11 only imposes a duty with regard to the initial filing of documents, and does not imply a duty to amend. *Oliveri v. Thompson*, 803 F.2d 1265, 1274–75 (2d Cir.1986); *Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 454 (7th

Cir.1987). The Ninth Circuit has not directly addressed this issue, but in *Golden Eagle Distributing Corporation v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir.1986), the court cites the Advisory Committee to the 1983 amendments to the Rules as stating that in applying the standard imposed by Rule 11, the court "should look at the situation which existed when the paper was filed." *Id.* at 1536.

In *Pantry Queen Foods, supra,* the court reasoned that Rule 11 need not impose a continuing duty to amend pleadings because the purpose of such a requirement would be met by the Rule 11 duty imposed on later filings.

> There is an implicit obligation to update because Rule 11 applies to all papers filed in the litigation. Each filing must reflect the results of reasonable inquiry. Rare is the case that goes from complaint and answer to trial without an intervening filing. Updating occurs in the course of these filings.

*Pantry Queen Foods,* 809 F.2d at 454. The circumstances of this case support this reasoning.

Defendant's answer to the complaint asserted that Defendant's agent, Mraz, was not negligent and counterclaimed that Mr. Joseph was contributorily negligent. In later pleadings and papers, the negligence assertion was repeated even though counsel was aware of the uncontradicted and legally conclusive evidence on this issue. These later pleadings and papers were silent as to the counterclaim of contributory negligence. In Defendant's pretrial statement, one of the listed "disputed facts" is "[w]hether any actions of the defendant were careless and negligent," and in Defendant's trial memo, one of the issues listed as requiring determination at trial is "[w]hether the defendant was negligent when the vehicle being driven by Joseph Mraz, III, struck the vehicle being driven by plaintiff Stanley Joseph." These statements are clearly not founded in fact and law according to the facts as then known by Defendant's counsel, as is evident from the investigative reports, depositions and other evidence which Defendant's counsel had by that time reviewed, as well as the Declaration of Gary Beaver. This is further evidenced by the fact that counsel was unable in the trial memo to articulate any rational argument on this point. The memo simply states that "[t]he defendant does not submit argument as to this issue, but will leave the determination of this issue to the Court based upon the facts presented at trial."

Defendant argues that it was willing to stipulate to most, but not all, of the essential facts surrounding the determination of negligence, and that if Plaintiffs spent resources in establishing negligence, they did so needlessly. Although some facts were, in fact, stipulated to, this did not obviate the need for Plaintiff to establish by documents and testimony that Mraz was negligent. Since Plaintiff was required to establish the existence of negligence in this case, Plaintiff's counsel would have been remiss if he had failed to present that evidence in the most convincing manner possible.

The court notes that much of the evidence regarding negligence was also probative of the contested issues with regard to the extent of Plaintiffs' damages, and that Plaintiffs would have been required to present that evidence even if Defendant had admitted liability in this case. Even so, this trial could have been appreciably shortened and simplified had the Defendant conceded the liability issue with which it could not in good faith disagree.

The court is aware that Defendant's counsel were placed in an awkward position in this case due to the Justice Department policy against stipulating to liability. However, this court is unwilling to allow Justice Department policy to require Plaintiffs and this court to spend the resources and time required to establish facts which cannot be rationally disputed. Although a broad policy in matters such as these may aid the Justice Department in controlling a large and diverse caseload, a broad policy may in extreme cases entail additional costs. This is such a case.

In opposing Plaintiff's motion for sanctions, Defendant has made a countermotion

for sanctions, based on the fact that Plaintiff pleaded inconsistently by suing Mraz in his personal capacity and yet asserting that he was acting within the scope of his employment. Plaintiffs also asserted a claim for punitive damages, which are not allowed under the Federal Tort Claims Act, 28 U.S.C. § 2674. Defendant's motion is without substance, since inconsistent pleading is allowed under Fed.R.Civ.P. 8. The claim for punitive damages was only brought against Mraz, and all claims against Mraz were dropped when Defendant admitted that Mraz had indeed been acting within the scope of his employment. Although Plaintiffs did include in their Proposed Findings of Fact and Conclusions of Law a claim for prejudgment interest, this was apparently included in the document by mistake, and was corrected after it was brought to counsel's attention by the court. Defendant's motion for sanctions is hereby DENIED.

Plaintiffs have submitted affidavits and documents regarding the time spent on this case. Upon consideration of the time spent by Plaintiff in preparing and presenting this case, and in light of this court's own determination of the proportion of that time which was spent as a result of Defendant's failure to abide by the requirements of Rule 11, Plaintiffs' motion is hereby GRANTED, and sanctions in the amount of $6,000 are awarded.

### ON MOTION TO ALTER OR AMEND ORDER

Defendant United States has moved this court for an alteration or amendment of the court's prior order imposing sanctions against Defendant for failure to comply with Fed.R.Civ.P. 11. The court, having considered the memoranda filed with regard to the motion, and having heard the arguments of counsel, finds that any alteration or amendment of the sanction imposed in this case would be unwarranted.

Defendant initially asserts that the statements contained in the pretrial statement and the trial brief are merely statements of the position which the government is taking. Indeed, since the negligence of Mraz was not admitted, it was an issue, and the statements to that effect in the pretrial statement and the trial brief were therefore technically correct.

However, the court disagrees with Defendant's limited reading of the purpose and effect of the pretrial statement. The statement is filed in anticipation of the pretrial conference provided for in Fed.R.Civ.P. 16. That rule provides that one of the matters to be considered at the conference is "the formulation and simplification of the issues, including the elimination of frivolous claims or defenses" Fed.R.Civ.P. 16(c)(1). Moreover, Local Rule 235-7 indicates that in filing the required pretrial statement, the parties are to limit the issues for trial. "Counsel are expected to make a good faith effort to stipulate to all facts not reasonably disputable for incorporation into the trial record without the necessity of supporting testimony or exhibits." L.R. 235-7(d). This indicates that even if not a violation of Rule 11, Defendant's pretrial statement is sanctionable as a violation of the local rule. Since the negligence issue cannot be disputed in good faith, the local rules require elimination of that issue. Even under Rule 11, however, the statement is sanctionable, since a statement that an issue is in dispute necessarily implies that Defendant has some good faith argument on the issue. Defendant's argument elevates form over substance.

Defendant maintains that this court cannot impose sanctions simply because "it disagrees with the position of the United States taken at the time of the filing of [the] documents and during trial ..." To the contrary, sanctions were imposed not simply because the court ruled against Defendant on the issue of liability, but rather, sanctions were imposed because Defendant's position as reflected in their pleadings was without rational basis in fact or law. To rule against a party is not the same as finding that a party's position in litigation is entirely unreasonable. Defendant's assertion that it has a right to demand that Plaintiffs prove their case at trial, and that the court's decision amends Rules 36 (request for admissions) and 56 (summary

judgment) out of existence is not correct. Rule 11 does not allow a party to maintain an unreasonable position in a case no matter what the issue may be, and a Plaintiff should not be forced to resort to summary judgment or a request for admissions in order to resolve issues not reasonably disputed.

In holding that Rule 11 does not impose a continuing duty to update and revise pleadings, this court relied on the view that such a requirement is unnecessary because unfounded pleadings would be automatically updated through the course of litigation.

> There is an implicit obligation to update because Rule 11 applies to all papers filed in the litigation. Each filing must reflect the results of reasonable inquiry. Rare is the case that goes to trial without an intervening filing. Updating occurs in the course of these filings.

*Pantry Queen Foods, Inc. v. Lifschultz Fast Freight*, 809 F.2d 451, 454 (7th Cir. 1987). Thus, although this court refused to sanction Defendant for its failure to update its unfounded answer to Plaintiff's complaint as the facts became known, this refusal was based on the fact that pleadings would be updated in the course of litigation. An important step in that process is the pretrial statement, which is intended to force the parties to limit the issues for trial. Defendant asserts that the pretrial statement is not of the same "stature" under the Federal Rules as the answer to a complaint, but this court is reluctant to hold that documents filed in an action require differing levels of sincerity depending upon whether the Federal Rules specifically mention them.

This use of Rule 11 is not unprecedented. In *Northern Trust Co. v. Muller*, 616 F.Supp. 788 (D.C.Ill.1985), at several status hearings prior to plaintiff filing a motion for summary judgment, the court suggested to defendant's counsel that its arguments were groundless. Nevertheless, defendant "persisted in defending the action on patently frivolous grounds." Because of this, plaintiff was forced to go to the expense of obtaining summary judgment. The court sanctioned defendant under Rule 11:

> Though [defense counsel] asserts reasons for putting [plaintiff] to its proof under Rule 56, not one of those items need have taken more than a few minutes' conversation between counsel—each acting in good faith to resolve the issue of [defendant's] unquestioned liability. Instead [defendant's counsel] forced [plaintiff] to the time-consuming and expensive summary judgment route.

*Id.* at 790. Thus, the court sanctioned a defendant who unreasonably forced the plaintiff to go to the effort of proving the issue of liability, when such could not be reasonably disputed. The only difference between *Northern Trust Co.* and the present case is that instead of being forced to make a motion for summary judgment, Plaintiffs were forced to prove the issue at trial. Although Plaintiffs chose an arguably more time consuming method, there does not appear to be a principled way of distinguishing the effect of Defendant's actions in these two situations. Plaintiffs may have decided that proof at trial would be easier than a motion for summary judgment, since they would have had to put on much of the liability evidence in order to show damages. Defendant was willing to stipulate to some of the facts underlying the determination of liability, but disputed others, including the applicable speed limit and whether Plaintiff's truck was moving at the time of the accident. Since Defendant required this court to find liability, Plaintiffs can hardly be faulted for presenting the exhaustive evidence which made that finding inevitable.

■ Defendant also asserts that this court is precluded from awarding sanctions against the United States because of the doctrine of sovereign immunity. Defendant is, however, unable to cite a single case which even alludes to such a position. On the other hand, Plaintiffs cite several cases in which sanctions were awarded against the United States under Rules 11 and 60. In *Schanen v. United States Department of Justice*, 798 F.2d 348 (9th Cir.1986), the Ninth Circuit actually directed the trial court to award attorney's fees as a sanc-

**414**

tion for the government's failure to properly defend a Freedom of Information Act lawsuit which caused plaintiffs to incur significant litigation costs. The court did not, however, directly address the issue of sovereign immunity.

The Federal Rules of Civil Procedure have been promulgated pursuant to authority under 28 U.S.C. 2072. Although it is true that sovereign immunity must be expressly waived, by consenting to be sued in Federal Court under the Tort Claims Act, the government can be considered to have consented to the rules under which that court operates. Defendant has taken advantage of the Rules in the course of this litigation, including the making of a motion to sanction Plaintiffs under Rule 11. Although, as the government asserts, the Federal Rules were not authorized by Congress to abridge any substantive rights, an award of sanctions is in this context more a matter of procedure than substance. In fact, the award in this case is not even an award of attorney fees as such. The award is simply a sanction, the amount of which is determined in reference to the amount of fees expended by the other party. Rule 11 allows the court to impose an "appropriate sanction," which may include a payment of expenses, including fees.

Plaintiffs have made a request for an award of attorney fees related to opposing the present motion. This request is denied based on the fact that the original motion for sanctions had been based on Defendant's answer to the complaint, and Defendant had not had the opportunity to respond to the issue of whether the pretrial statement and trial memo could form the basis of a sanction.

Accordingly, it is ORDERED that Defendant's Motion to Alter or Amend Order Granting Plaintiff's Motion for Sanction and Denying Defendant's Motion for Sanctions is hereby DENIED.