CEDAR CREST HEALTH CENTER, INC., Hazel Nugent, and Robert Stegemiller, b/n/f Marilyn Heavenridge, Plaintiffs,

v.

Otis BOWEN, M.D., as Secretary of the United States Department of Health and Human Services, Donald L. Blinzinger, as Administrator of the Indiana Department of Public Welfare, Woodrow A. Myers, Jr., M.D., as Secretary of the Indiana State Board of Health, Defendants.

No. IP 87–958–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 12, 1989.

David F. McNamar, Randall R. Fearnow, Steers Sullivan McNamar & Rogers, Indianapolis, Ind., for plaintiffs.

Deborah J. Daniels, U.S. Atty., Indianapolis, Ind., Laurence Gilbert, Asst. Regional Counsel, Dept. of Health & Human Services, Chicago, Ill., Richard Thornburgh, U.S. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for Federal defendant.

Patricia K. Slater, Deputy Atty. Gen., Office of the Atty. Gen., State of Ind., Indianapolis, Ind., for State defendants.

## ORDER ON CROSS MOTIONS FOR SANCTIONS

McKINNEY, District Judge.

The federal defendant, the Secretary of the United States Department of Health and Human Services (the "Department"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, moved for sanctions in this cause against the plaintiffs' attorneys (the "Attorneys") and the administrator and official representative (the "Administrator") of plaintiff, Cedar Crest Health Center,

Inc., ("Cedar Crest")[1]. In its response to the Department's motion for sanctions, the respondents asked that this Court grant sanctions against counsel for the Department. The Court, having read the parties' briefs and being duly advised of all the relevant issues contained therein, now GRANTS the Department's motion for sanctions and DENIES the respondents' motion for sanctions. The appropriate sanctions are discussed herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This cause originated September 3, 1987, when the Attorneys sought and were granted *ex parte* a temporary restraining order ("TRO"). This Order, *inter alia,* prohibited the defendants and their agents from taking any action to deny Cedar Crest full status as a provider certified for participation in the Medicaid program created by Title XIX of the Social Security Act, pending a hearing on whether a preliminary injunction should issue. The plaintiffs sought this order to maintain Cedar Crest's certification as a skilled nursing facility ("SNF"), and therefore remain eligible for federal funding. Cedar Crest's provider status came in jeopardy after two separate certification surveys found Cedar Crest in non-compliance with the SNF requirement conditions of participation. *See* 42 C.F.R. 405.1124.

Following these findings of non-compliance, Cedar Crest made a decision to renew only its Medicaid agreement, and not its Medicare agreement. The Health Care Financing Administration ("HCFA") nevertheless informed Cedar Crest that the facility's eligibility to receive reimbursement for both Medicaid and Medicare would be terminated September 4, 1987, because of the uniform standards for SNFs under Medicaid and Medicare. It was Cedar Crest's position that because it chose not to renew its Medicare agreement, HCFA could not "unilaterally" terminate its Medicaid certification.

Prior to the preliminary injunction hearing, the district judge dismissed the plaintiffs' complaint based upon lack of subject matter jurisdiction.[2] Notice of intent to appeal this decision was filed December 9, 1987, and a praecipe for the record of proceedings was filed December 16, 1987. The Department filed its motion for sanctions December 23, 1987. The appeal ended January 13, 1988, when the respondents asked that the cause be dismissed.

The Department's motion for sanctions included the following allegations:

(1) Cedar Crest's assertion that the end of Medicaid reimbursement was imminent was not well grounded in fact, in that the reimbursement would continue for thirty days after the termination date;

(2) no irreparable harm would result, as alleged by Cedar Crest, since SNF beds could be recertified for intermediate nursing facility use, at a difference of only $10.20 per day;

(3) claims that the Department was only interested in "paper compliance" were untrue and misleading to the district judge who issued the TRO, in that the plaintiffs knew of at least nine incidents of improper care, and these incidents were the foundation of the decision to terminate Cedar Crest's Medicare provider agreement;

(4) the Attorneys' claim that the Department was notified that a motion requesting a TRO would be filed is not well grounded in fact because notice was insufficient;

(5) the plaintiffs' claim that the government had not certified that the Cedar Crest facility has been notified of the deficiencies and has failed to correct them is not well grounded in fact;

(6) the named patient-plaintiffs had no standing to challenge the termination of Cedar Crest's Medicaid provider certifi-

---

**1.** For the purposes of clarity, the Attorneys and the Administrator will be collectively referred to herein as respondents.

**2.** The judge dismissed the complaint September 11, 1987, pursuant to an order issued from the bench. A formal entry reflecting this decision was issued October 13, 1987.

cation pursuant to the Supreme Court's holding in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980); and

(7) jurisdictional allegations were insufficient pursuant to the Seventh Circuit's holding in *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072 (7th Cir.1982), and furthermore these allegations were not well grounded in fact.

Respondents filed a counter-motion for Rule 11 sanctions against the Department's counsel, claiming counsel's motion for sanctions was not warranted by existing law or the good faith extension of existing law. Furthermore, respondents claim counsel's Rule 11 motion was filed vexatiously or for the purpose of harassment. Additionally, respondents assert sanctions cannot be imposed in favor of the Department because its motion for sanctions was not timely filed and therefore this Court is without jurisdiction to consider the matter.

## II. RULE 11 STANDARDS

Before considering whether sanctions are appropriate in a particular case, this Court must necessarily determine the appropriate standards to be applied when considering a Rule 11 motion. The starting point for such a determination is the language of the rule itself. Rule 11 states in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The rule goes on to state:

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appro-

priate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fees. (Emphasis added.)

As the Seventh Circuit has explained in several decisions, there are two grounds for sanctions in Rule 11: the "frivilousness clause" and the "improper purpose clause." *See Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir.1989); *Insurance Ben. Administrators, Inc. v. Martin*, 871 F.2d 1354 (7th Cir.1989). The frivilousness clause is governed by an objective standard, while the improper purpose clause invokes a subjective standard. *Mars* at 931–32. In addition, the frivilousness clause is comprised of two subparts: (1) whether the party or attorney made a reasonable inquiry into the facts; and (2) whether the party or attorney made a reasonable inquiry into the law. *Martin* at 1358. As the most significant claims made by the Department for sanctions involve the frivilousness clause, the Court desires to explore this standard further.

In *Martin*, quoting from *Brown v. Federation of State Medical Bds.*, 830 F.2d 1429 (7th Cir.1987), the court analyzed the inquiries a district court must make in determining whether an attorney's conduct has violated the frivilousness clause. The court stated in relevant part:

To determine whether the attorney made a reasonable inquiry into the facts of a case, a district court should consider: whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other papers; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient prefiling investigation; and whether discovery would have been beneficial to the development of the underlying facts.

To determine whether the attorney in question made a reasonable inquiry into

the law, the district court should consider: the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law.

*Martin* at 1358.

Regardless of whether an objective or subjective standard is used, sanctions *must* be imposed for violative conduct because Rule 11 uses the word "shall." *Martin* at 1358; *Frantz v. United States Powerlifting Fed'n.*, 836 F.2d 1063, 1065 (7th Cir. 1987). Thus, it is this Court's duty to apply the standards discussed herein to determine whether a Rule 11 violation has occurred. If Rule 11 has been violated, this Court is compelled to impose sanctions against the offending party. The only discretion that this Court has is in determining the appropriate sanction when a Rule 11 violation is found. *Martin* at 1358–59.

## III. DISCUSSION

Respondents claim filing of the Notice of Appeal December 9, 1987, divested the district court of subject matter jurisdiction to consider the Rule 11 motion. Respondents also assert that the Rule 11 motion cannot be considered because it was not timely filed. These two issues must be resolved before this Court properly can decide whether a Rule 11 sanction has occurred.

### A. *Lack of Jurisdiction*

■ It is the respondents' position that the district court is without jurisdiction over the issues presented herein, based upon the December 12, 1987, Notice of Appeal that was filed in the underlying case. Counsel's support for this proposition, however, proves thin and does not persuade this Court that jurisdiction is lacking. While some courts have agreed with the respondents' argument,[3] the Seventh Circuit apparently is not so inclined.

A decision arguably dispositive on the issue is *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). In *Szabo*, the court held that the dismissal of a complaint under Rule 41(a)(1)(i) does not deprive the district court of jurisdiction to award sanctions under Rule 11. The court stated an award under Rule 11 is a sanction for violating a rule of court, the purpose being to discourage unnecessary complaints and other filings. *Id.* at 1077–79. As such, dismissal of the underlying complaint does not deprive the court of jurisdiction.

While the case at bar involved an appeal (and subsequent dismissal), rather than a dismissal at the trial level, the reasoning in *Szabo* comports with accepted notions of a court's power to impose sanctions. The Seventh Circuit has held that a district court has inherent authority to engage in those judicial acts attendant to a live controversy before the court, including the imposition of Rule 11 sanctions, regardless of the lack of subject matter jurisdiction. *Wojan v. General Motors Corp.*, 851 F.2d 969 (7th Cir.1988). Thus a lack of jurisdiction does not prevent a court from imposing sanctions should a Rule 11 violation occur.

■ Further support for the ability of this Court to impose sanctions can be found on at least two fronts. First, the Seventh Circuit has recognized that district courts, not courts of appeal, are in a better position to determine whether sanctions are warranted. This is one reason why the Seventh Circuit adopted a deferential standard of review for appellate court review of Rule 11 decisions in *Mars Steel*. Second, filing a Notice of Appeal does not strip a district court of all its jurisdiction over the case. The general rule is that the perfection of an appeal vests jurisdiction in the court of appeals and further proceedings in the district court cannot then take place without leave of the court of appeals. *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 792 (7th Cir.1983);

---

3. *See Johnson Chemical Co. v. Home Care Prods., Inc.*, 823 F.2d 28 (2d Cir.1987); *Foss v.*

*Federal Intermediate Credit Bank,* 808 F.2d 657 (8th Cir.1986).

*Asher v. Harrington,* 461 F.2d 890, 895 (7th Cir.1972). However, an exception to this rule exists for motions that are collateral to the judgment and are filed with the district court while the appeal on the merits is pending. *Overnite* at 792. As the court said in *Szabo,* once the losing party files a valid appeal from the final decision, the district court judge loses "jurisdiction"— though only on the merits because awards for fees are collateral questions. *Id.* at 1078. As are fees, questions of sanctionative conduct are properly characterized as collateral. In addition, the motion for sanctions was filed December 23, 1987, prior to the January 13, 1988, dismissal of the appeal. Accordingly, this Court has jurisdiction to consider the motions for sanctions.

## B. *Delay in Filing Rule 11 Motion*

■ The respondents also claim the Department's Rule 11 motion cannot be considered because it was not timely filed. In support of this, the respondents argue motions for sanctions must be filed within ninety days of the filing of the offensive paper. This raises two issues. First, what time period constitutes a delay in filing a motion for sanctions? Second, from what point is the time period measured.

The Seventh Circuit in *Szabo* held that a motion for sanctions filed within ninety days is timely. *Id.* at 1080. While the Seventh Circuit has not held that Rule 11 motions filed beyond ninety days are time barred, the ninety-day period at least has been accepted as a workable period pending further review of the issue. There is no need for additional review here, because this Court believes the Department's Rule 11 motion was filed within the ninety-day period.

Whether a motion was filed within ninety days will of course depend upon the point at which the time period began. The respondents argue *Szabo* did not use the term "judgment" when referring to the ninety-day period. Therefore, respondents argue, the time period should begin running when the offensive paper is filed. In support of this, respondents cite to *Szabo* wherein the court stated "[t]he violation of

Rule 11 is complete when the paper is filed." *Id.* at 1077. *See also Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.,* 809 F.2d 451, 453–54 (7th Cir.1987).

It is true that *Szabo* did not use the word "judgment" when discussing the time periods applicable for filing bills of costs and requests for attorneys' fees. However, the Local Rules for the Northern District of Illinois, which the court was discussing, specifically state that the filing period begins to run at the time judgment is entered. The advisory committee's notes to Rule 11 also are insightful. The notes state in relevant part:

> A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.

Fed.R.Civ.P. 11 advisory committee's note.

In the case at bar, the respondents filed a motion for a TRO and a complaint for an injunction. Pursuant to the advisory committee's notes, the Department's motion for sanctions should have been filed after the issues contained therein were decided. This language contemplates some type of judgment by the court. The appropriate judgment in the case at bar is the district judge's written entry issued October 13, 1987, dismissing the complaint. The district judge's November 11, 1987, ruling from the bench did not begin the ninety-day period, as the respondents argue. It is established procedure that a court speaks through its docket sheet. The docket sheet in this case reflects that no formal written order was issued until October 13. Because the motion for sanctions was filed within ninety days of October 13, the motion was timely filed.

## C. *Imposition of Sanctions*

█ A review of the Department's allegations of sanctionative conduct by the respondents leaves the Court most concerned with allegations labeled 6 and 7. This conduct involves the Attorneys' failure to properly alert the district judge to potentially dispositive authorities. Specifically, the Attorneys said *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072 (7th Cir.1982), upon which the district court ultimately dismissed the plaintiff's complaint for lack of jurisdiction, was distinguishable from the plaintiffs' complaint, yet no attempt to distinguish this case was made. Additionally, *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), which holds that patient-plaintiffs being involuntarily moved from a certified Medicaid facility have no right to challenge decertification, never was cited in the trial brief. Even worse, neither of these decisions was brought to the attention of the district court faced with making an *ex parte* ruling on whether to issue a TRO.

Respondents correctly state that complaints for relief need not contain legal citations. *Szabo* at 1082. However, respondents' other arguments are strained. Respondents state in their opposing memorandum:

> The brief sketches out the nature of the plaintiffs' collateral constitutional claim and does make reference to the *Americana* case. Counsel did not see the necessity for burdening the Court, especially a judge who was well aware of the legal ramifications of *Americana*[4], with a comprehensive examination of all cases in the area.

Disclosing and discussing potentially dispositive cases is not a "burden" on the court, as respondents characterize it. Rather, it is a duty of every practitioner, the violation of which is sanctionable under Rule 11. The Attorneys should have alerted the judge issuing the TRO of *Americana* and *O'Bannon*. This is particularly true because the TRO was granted *ex parte*, and the Department claims the respondents failed to provide proper notice of the TRO request. At a minimum, *Americana* and *O'Bannon* should have been fully analyzed in the respondents' briefs. This did not occur. Notably, to this date the Attorneys have failed to discuss why *O'Bannon* was not addressed.

The Seventh Circuit recently stated in no uncertain terms that sanctions are appropriate when counsel for one side fails to bring dispositive authority to the court's attention. *Mannheim Video, Inc. v. County of Cook*, 884 F.2d 1043 (7th Cir. 1989) (upholding the district court's denial of sanctions based on the abuse of discretion standard). In *Mannheim Video*, the court stated, "The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless." *Id.* at 1047. The stern warnings in *Mannheim Video* are particularly relevant in the case at bar because both cases sought relief through an injunction to prohibit some alleged improper conduct. Another similarity is that the party against which sanctions were sought in *Mannheim* failed to cite relevant authority in a motion filed seeking a restraining order. In disapproving of such conduct, the court stated "counsel's failure to cite [the omitted case] in his motion for a restraining order is also a poor example of an attorney conforming to his duties as an officer of the court." *Id.* at 1047.

As in the case at bar, counsel in *Mannheim Video* later attempted to distinguish the controlling cases. The Seventh Circuit again chastised counsel for this. In so doing, the court said:

> [A]n attorney should not ignore potentially dispositive authorities; the word "potentially" deliberately included those

---

4. Judge Noland, who dismissed the plaintiffs' complaint, was familiar with *Americana*, because he had issued an order in that case when it was before the Southern District of Indiana. More important, however, is that one of the Attorneys represented the plaintiffs in that case. Therefore, the attorney was inherently familiar with the holding in *Americana* and was under a duty to fully present the holdings therein to the court, regardless of Judge Noland's knowledge of the case.

cases arguably dispositive. Counsel is certainly under obligation to cite adverse cases which are ostensibly controlling and then may argue their merits or inapplicability. But counsel may not hide from virtually controlling cases, only later to argue that the omission was due to a scintilla of difference between already decided cases and the one being litigated.

The conduct of the Attorneys in connection with their treatment, or lack thereof, of *Americana* and *O'Bannon* is violative of the "frivilousness clause" of Rule 11. A reasonable inquiry into the law would have alerted the Attorneys that the patient-plaintiffs' claims were barred by *O'Bannon*, and that *Americana* would need to be thoroughly analyzed and distinguished in order to serve as a basis for jurisdiction.[5] Pursuant to the Seventh Circuit's direction in *Mannheim Video*, and the mandatory nature of Rule 11, sanctions of some type must be imposed against the Attorneys. As for Cedar Crest's Administrator and representative in this cause, sanctions are not warranted against him based upon the Attorneys' failure to adequately cite relevant authority.

■ The Court now turns to a second issue under the frivilousness clause, relating to the factual support of the allegations of the petition. The standard is whether reasonable inquiry was made into the facts. Using this standard, the allegation characterizing the Department's interest as only in "paper compliance" rises to the level of sanctionative conduct under Rule 11. Paragraph twenty of the plaintiffs' complaint for an injunction states in relevant part:

The defendants will not be harmed by the granting of the requested relief in that the defendants have not alleged that the complained of actions were taken for

the protection or benefit of the citizens of the United States or that there is an immediate threat to the health and safety of Cedar Crest's patients. Complaints against Cedar Crest are concerned instead with Cedar Crest's alleged failure to achieve "paper compliance" with federal regulations enforced by the defendants.

With this allegation in mind the Court returns to the language of Rule 11. The rule states that the signature or an attorney or a party constitutes a certificate by the signer that to the best of the signer's knowledge the pleading is well grounded in fact. The Administrator signed an affidavit dated September 3, 1987, swearing to the truth of the matters alleged in the complaint. The facts of this case show beyond a doubt that the Administrator knew more than mere paper compliance was at issue.

Exhibit "D" filed with the Department's motion for sanctions contains documents entitled "Statement of Deficiencies and Plan of Correction" completed in connection with surveys of Cedar Crest conducted June 3–5, 1987, and July 20–22, 1987. These statements contain numerous, detailed allegations of improper patient care. Each of these statements is signed by the Administrator. In light of these allegations of improper care, some of which are quite serious[6], it is clear that the claim of mere paper compliance was not well grounded in fact. This is a Rule 11 violation. Furthermore, reasonable inquiry and consultation between the Administrator and the Attorneys would have revealed that the allegation of mere paper compliance was not well grounded in fact. It is impossible to believe otherwise. There-

---

5. Two additional basis of jurisdiction other than the federal question jurisdiction discussed in *Americana* were alleged by the plaintiffs. These other basis were 42 U.S.C. § 405(g) (statutory grant of jurisdiction after exhaustion), and 28 U.S.C. § 1361 (mandamus jurisdiction). These obscure jurisdictional claims were ultimately rejected by the district court and in no way excuse the lack of discussion regarding *Americana*.

6. Typical allegations included the following: "a moist white mushy palm and a foul odor was present"; "at least 6 residents with severe contractures of the hands lacked anti-contracture devices. 2 of these residents had a strong foul odor of the palms and their fingernails were digging into the palms of their hands;" residents' call-lights used to summon assistance were pulled out of the wall and inoperative.

fore, the Attorneys also have violated Rule 11 in this respect.

The Court also has considered the respondents' counter motion for sanctions against counsel for the Department. The Court is convinced that the record does not support a finding that counsel filed his motion for Rule 11 sanctions vexatiously or for the purpose of harassment, or that the motion is not supported by law. On the contrary, counsel for the Department has pointed out two basis for imposing sanctions against the Attorneys, and another basis for sanctioning the Administrator. As such, the Department's counsel has not violated Rule 11.

■ Having found Rule 11 violations, this Court now must decide the appropriate sanction. Unlike determining whether sanctionative conduct has occurred, a court has great discretion is determining the appropriate sanction. *Frantz*, 836 F.2d 1063, 1066 (7th Cir.1987). In choosing a sanction, the least severe sanction that is adequate to serve the purpose should be imposed. *Brown v. Fed'n of State Medical Boards of the U.S.*, 830 F.2d 1429 (7th Cir.1987), quoting from *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987). The type of sanction devised by the court should, of course, relate to the severity of the violation. *Martin*, 871 F.2d at 1359.

■ Counsel for the Department has submitted itemization of attorney fees and expenses in excess of $10,000. It is within this Court's discretion to order the respondents to pay these fees. However, the Court declines to assess respondents the full $10,000 for the violations discussed herein. Though Rule 11 violations have been identified, much of the conduct of the respondents was within the scope of proper conduct. Therefore, it would be unfair to force respondents to pay all of the costs the Department incurred in connection with preparing and presenting the motion to dismiss. The Department asks for 65.25 hours of work at $150 per hour ($9,787.50), plus related expenses for air fare, photocopying and the like. The Court believes a non-frivolous complaint would have excluded the issue of federal question jurisdiction, claims of relief by the patient-plaintiffs, and claims of mere paper compliance. The Court further believes thirty hours is a reasonable amount of time for the Department to spend preparing its response to these frivolous issues. The Court will compute these thirty hours at the rate of $150 per hour, for a total of $4,500 to be paid equally by the respondents ($1,500 each).

The Court has issued its ruling of sanctions against the Attorneys for their disregard of known dispositive caselaw, pursuant to *Mannheim Video*. The Attorneys are advised to read *Mannheim Video* closely, and heed the warnings contained therein during future litigation.

## IV. CONCLUSION

After careful consideration of all arguments presented in this case, the Court believes financial sanctions are required against the Attorneys and the Administrator. Sanctions against the Department's counsel are not appropriate. The failure of the Attorneys to cite and discuss relevant authority is a violation of Rule 11, as discussed by the Seventh Circuit recently in *Mannheim Video*. In addition, the respondents' allegation that the Department was merely interested in paper compliance also violates Rule 11. In its discretion, the Court orders the respondents to pay $4,500 in attorney fees within 45 days of this Order. Pending payment of attorney fees, this cause is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.