10 F.3d 1333
 1993-2 Trade Cases P 70,435, 27 Fed.R.Serv.3d 828
 LaSALLE NATIONAL BANK OF CHICAGO, as Trustee under Trusts
Numbered 40244, 53645, 100385 and 100386, Unity
Ventures and William Alter, Plaintiffs-Appellees,
v.
COUNTY OF DuPAGE, a body politic, and Board of Commissioners
of DuPage County, Defendants-Appellants.
 No. 92-2545.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 15, 1993.
Decided Dec. 3, 1993.
 
 James P. Chapman (argued), Alan S. Mills, Chapman & Associates, Chicago, IL, for plaintiffs-appellees.
 William G. Welnhofer, William C. Ives, Tracy E. Donner, Keck, Mahin & Cate, Chicago, IL, James E. Ryan, State Atty. (argued), George J. Sotos, Barbara A. Preiner, Office of the State's Attorney of DuPage County, Wheaton, IL, Paul G. Simon, Schwartz & Freeman, Chicago, IL, James H. Ryan, Horwood, Marcus & Braun, Chicago, IL, for defendants-appellants.
 Before CUDAHY, RIPPLE, and ROVNER, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 The County of DuPage and its Board of Commissioners ["the County"] appeal the district court's denial of its petition for sanctions under Federal Rule of Civil Procedure 11 and for attorneys' fees pursuant to 42 U.S.C. Sec. 1988. For the reasons discussed below, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 A. Prior Litigation History
 
 3
 Because the factual background of this lawsuit has been chronicled thoroughly in two previous opinions of this court,[1] we present here only the brief overview necessary to place in perspective the County's petition for sanctions and attorneys' fees.
 
 
 4
 In 1969, plaintiff William Alter, with the commercial and financial backing of plaintiffs Unity Ventures and the LaSalle National Bank, purchased an unincorporated parcel of land to develop a luxury residential and commercial community. The land was in DuPage County, between the villages of Lisle and Woodridge. In dealing with these three governmental entities, the original defendants in this case,[2] Mr. Alter soon encountered difficulties in obtaining zoning, water, and sewage disposal access. In 1975, he sued the County in state court and obtained a declaration, which was affirmed on appeal, that the County's denial of his zoning application was arbitrary and capricious.
 
 
 5
 Once the state court appeal concluded in his favor, Mr. Alter sought a source of water and of sewage disposal for his development. In 1982, after encountering numerous difficulties with the defendants in obtaining access to these facilities, the plaintiffs filed this lawsuit in the district court. The complaint alleged that the County and two villages conspired, "through a series of illicit agreements,"[3] for the purpose of controlling real estate development and unreasonably restraining competition. According to the allegations, these concerted actions, the wrongful refusal to rezone the plaintiffs' property and to provide water or sewage disposal service, damaged the plaintiffs in terms of delay and cost.
 
 
 6
 The district court denied the defendants' first motion to dismiss; however, on interlocutory appeal, we reversed and directed dismissal of the antitrust claims on state action immunity grounds. See LaSalle Nat'l Bank v. County of DuPage, 777 F.2d 377, 385 (7th Cir.1985), cert. denied, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986). The plaintiffs then sought to amend their complaint. After the district court denied leave to amend, this court remanded with directions that the district court consider the plaintiffs' motion. R.102. The plaintiffs' amended complaint recharacterized the claims as Sec. 1983 due process and equal protection violations. The district court dismissed the amended complaint on res judicata grounds, but this court again reversed. See LaSalle Nat'l Bank v. County of DuPage, 856 F.2d 925 (7th Cir.1988), cert. denied, 489 U.S. 1081, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989).
 
 
 7
 On remand, the district court denied another motion to dismiss, but determined that an earlier state court ruling estopped the plaintiffs from claiming damages with respect to the sewer issue. At the end of discovery, the defendants sought summary judgment. The district court responded by dismissing the equal protection and due process claims for failure to state a claim under Rule 12(b)(6) and by dismissing the takings claim as not ripe for adjudication. LaSalle Nat'l Bank v. County of DuPage, No. 82 C 6517, 1991 WL 38686 (N.D.Ill. March 18, 1991). The plaintiffs initially appealed; however, after settling the litigation with the village defendants, they dismissed their appeal.
 
 B. County's Petition for Sanctions and Fees
 
 8
 At that point, DuPage County sought sanctions and fees. The district court denied its petition. LaSalle Nat'l Bank v. County of DuPage, No. 82 C 6517, 1992 WL 131548 (N.D.Ill. June 3, 1992). Noting that a zoning variance, sewer service, and water service indisputably were denied to the plaintiffs, it determined that the conspiracy claims underlying both the antitrust and the Sec. 1983 claims were supported by sufficient factual inquiry. The court further commented on the complexity and developing nature of the legal issues involved, and consequently the unsuitability of this type of case to Rule 11 sanctions. Accordingly, it denied the defendants' petition for sanctions and fees.
 
 
 9
 In reaching this conclusion, the district court held that the plaintiffs had conducted a "reasonable inquiry" into the facts concerning the defendants' allegedly conspiratorial acts before filing their complaint. R. 304 at 6-7. It pointed out that such factual inquiry, necessarily made in the course of preparing for two state court cases, included minutes from village board meetings and the depositions of many key officials.[4] Acknowledging the difficulty of discovering conspiracies, the court concluded that "the factual inquiries were sufficient to withstand Defendants' challenge to Plaintiffs' investigation." R. 304 at 7.
 
 
 10
 The district court also examined the plaintiffs' legal claims to determine whether the suit had been without legal foundation. It focused on its prior decision dismissing the plaintiffs' claims for failure to state a claim and for lack of ripeness.[5] The court first stated that it could not determine that the conspiracy central to the amended complaint did not exist, and declined to fault the plaintiffs' prefiling legal research. The court then reviewed each of the plaintiffs' legal arguments that it later dismissed in its summary judgment determination. It opined that, although the takings claim was not ripe, "[p]laintiffs made a reasonable argument that, on these particular facts, the state court litigation supplied them with a ripe issue." R. 307 at 8-9. Turning to the due process issues, the district court pointed out that this court had recognized the unsettled state of the law concerning substantive due process with respect to property interests in New Burnham Prairie Homes v. Village of Burnham, 910 F.2d 1474, 1480 n. 5 (7th Cir.1990). The court also noted that "reasonable minds might have differed about the notice question" underlying the plaintiffs' procedural due process claim. R. 307 at 9. Finally, it acknowledged that the plaintiffs' failure to allege membership in a class is a pleading discrepancy frequently overlooked and, in fact, one the district court itself overlooked at an earlier stage in the proceeding. The district court determined that this lapse was a minimal error "in the larger landscape of the case." R. 304 at 10. It concluded that, in this case, Rule 11 sanctions were particularly inappropriate: "The factual context of the case is certainly complex, and the law has been developing apace on a number of fronts." R. 304 at 11. For these reasons, it denied the defendants' petition for sanctions and fees.
 
 C. County's Contentions on Appeal
 
 11
 The County submits that the district court erred by failing to discover that the plaintiffs' conclusory conspiracy allegations had no basis in fact. In its view, the zoning, water, and sewer rulings were simply three separate sets of joint municipal decisions made by separate groups of public officials as part of their normal, lawful governmental and intergovernmental activities. The County also asserts that the trial court erred in holding that, because the plaintiffs' Sec. 1983 claims presented "tricky areas of law," sanctions were not required. It insists that there was no "new law" between 1986, the date of the amended complaint, and 1991, the district court's decision granting summary judgment to the defendants. According to the County, the plaintiffs should have known when they filed their amended complaint that they had no Sec. 1983 claim against the County. Following the district court's conclusions in its summary judgment ruling, the County argues that the plaintiffs' claims were "dead on arrival" in 1986.
 
 II
 DISCUSSION
 A. Scope of Review
 
 12
 The County first asks this court to "eschew the customary, deferential standard of review" and employ instead a de novo standard. Without case authority to bolster its position, the County reasons that, because the "substance of the alleged sanctionable violation [i.e., the conspiracy allegations] has gone intentionally unexamined by the District Court, no such deference should be extended by this Court." In the alternative, it urges us to determine that the district court's decision was an egregious abuse of discretion or a failure to use discretion.
 
 
 13
 The Supreme Court has directed that we apply an "abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). Cooter requires appellate courts to apply, under the same deferential scope of review, a unitary standard that encompasses factual questions, legal issues, and the tailoring of an appropriate sanction. The Supreme Court grounded its preference for this unitary approach in the reality that, in determining whether to impose sanctions, a district court engages in an essentially fact-bound inquiry to which it is far better suited than an appellate tribunal:
 
 
 14
 Familiar with the issues and litigants, the district court is better situated than the court of appeals to marshall the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11. Of course, this standard would not preclude the appellate court's correction of a district court's legal errors.
 
 
 15
 Id. at 402, 110 S.Ct. at 2459.
 
 
 16
 The Court noted the similarity between Rule 11 considerations and "those involved in determining negligence, which is generally reviewed deferentially." Id. The Court also based its mandate of discretionary review in its realization that the distinction between legal and factual issues, in a Rule 11 context, is particularly difficult:
 
 
 17
 Rather than mandating an inquiry into purely legal questions, such as whether the attorney's legal argument was correct, the rule requires a court to consider issues rooted in factual determinations. For example, to determine whether an attorney's prefiling inquiry was reasonable, a court must consider all the circumstances of a case.... In considering whether a complaint was supported by fact and law "to the best of the signer's knowledge, information, and belief," a court must make some assessment of the signer's credibility. Issues involving credibility are normally considered factual matters.
 
 
 18
 Id. at 401-02, 110 S.Ct. at 2459 (citation omitted).
 
 
 19
 Mindful of the Supreme Court's instruction, we must review a sanctions determination with considerable deference. We shall overturn the district court's decision only if that court has abused its discretion. We hasten to add, however, that our review for abuse of discretion "is not toothless." Matter of Excello Press, Inc., 967 F.2d 1109, 1112 (7th Cir.1992). "Deferential review will not prevent this court from ensuring that district judges reflect seriously, and consider fully, before imposing (or denying) sanctions." Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 936 (7th Cir.1989) (en banc). Accord Ross v. City of Waukegan, 5 F.3d 1084, 1088 (7th Cir.1993).
 
 B. Rule 11 Sanctions Determination
 
 20
 Rule 11 requires that every pleading of a party represented by counsel be signed by the attorney of record:the signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation.
 
 
 21
 That signature is a "certification that, based upon the signer's judgment, the action is not frivolous." Dahnke v. Teamsters Local 695, 906 F.2d 1192, 1199 (7th Cir.1990). The signer's conduct must be judged by inquiring what was reasonable to believe at the time the pleading or other paper was signed. Dahnke, 906 F.2d at 1201 (citing Rule 11 advisory committee's note to 1983 amendment).[6] Because Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," an attorney need not advance a winning argument to avoid Rule 11 sanctions. Brubaker v. City of Richmond, 943 F.2d 1363, 1378 (4th Cir.1991) (citing Rule 11 advisory committee's note to 1983 amendment).
 
 
 22
 Nevertheless, the rule does require a court to impose an appropriate sanction upon the party or attorney who signs a pleading in violation of the rule. Ross, 5 F.3d at 1088 (stating that "the determination of whether Rule 11 has been violated is necessarily very fact-based and is accordingly reviewed with deference, [but that] the imposition of sanctions, when Rule 11 has been violated, is mandatory") (citing United States v. Oberhellmann, 946 F.2d 50, 53 (7th Cir.1991); Dahnke, 906 F.2d at 1200) ). We have held that a district court abuses its discretion when it denies sanctions with no explanation, Wojan v. General Motors Corp., 851 F.2d 969, 974 (7th Cir.1988), or with an explanation that is so conclusory that the appellate court cannot review the substance of its decision, Ross, 5 F.3d at 1089. See also Confederate Memorial Ass'n, Inc. v. Hines, 995 F.2d 295 (D.C.Cir.1993) (stating "effective appellate review is impossible unless the District Court explains its reasons for imposing sanctions").
 
 
 23
 In this case, we review a fully explained sanction decision. Central to the district court's determination that sanctions were not appropriate was its determination that the case was factually complex and implicated legal theories in which the law, if not unsettled in terms of the basic doctrine, was not susceptible to easy application. It is precisely with respect to such a judgment call that Cooter requires that an appellate tribunal defer to the district court that lived with the case:
 
 
 24
 Familiar with the issues and litigants, the district court is better situated than the court of appeals to marshall the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11.
 
 
 25
 Cooter, 496 U.S. at 402, 110 S.Ct. at 2459.
 
 
 26
 We believe that the district court acted within the bounds of reasonable discretion when it determined that there was adequate pretrial investigation. The court was aware that the plaintiff had the benefit of previous state suits. The procedural history of this case never led directly to a resolution of the central issue, the existence of a conspiracy, or a merits disposition. Nevertheless, the court did note explicitly that the factual basis for a conspiracy was sufficiently well-grounded to permit the filing of a complaint. We must defer to the district court's conclusion in this regard.
 
 
 27
 In evaluating each of the legal claims, the district court noted that the existing law was not easily susceptible to application. With respect to some claims, the appropriateness of the district court's assessment is clear. For example, in the area of substantive due process, the court recognized that the law at the time of the plaintiffs' filing of the amended complaint was vague and lacked the necessary "contours" to give it definition in the context of property interests. See New Burnham Prairie Homes v. Village of Burnham, 10 F.2d 1474, 1480 & n. 5 (7th Cir.1990). The district court was rather rigorous in its estimation of some of the plaintiffs' claims. With respect to others, it was rather charitable and, although we might have been more demanding in our assessment, we cannot say that the district court reached a determination that was not within the range of options available to a reasonable jurist "within a broad range of permissible conclusions." Cooter, 496 U.S. at 400, 110 S.Ct. at 2458. Finally, we note that, although the plaintiffs included various theories of recovery, they all stem from a common factual scenario. We read the district court as concluding that, given the complexity of this case, it was permissible to approach the factual situation from different legal perspectives at the complaint stage. Again, given its estimation of the factual complexity of the case, we do not believe that an abuse of discretion occurred.
 
 
 28
 We have considered the district court's review of each of the legal claims and agree that it does not appear that the assertion of those claims was groundless or frivolous. Even though those claims were dismissed after discovery by the court's granting of the defendants' summary judgment motion, the plaintiffs' "failure of proof [during discovery] does not imply a violation of Rule 11." Samuels v. Wilder, 906 F.2d 272, 274 (7th Cir.1990). In Samuels, we wrote:
 
 
 29
 Rule 11 draws a "fine line. Rule 11 must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case, yet the need for discovery does not excuse the filing of a vacuous complaint."
 
 
 30
 Id. (quoting Frantz v. United States Powerlifting Fed'n, 836 F.2d 1063, 1068 (7th Cir.1987)). We pointed out in Samuels that "the responsibility for patrolling that line rests with the district judges." Id. In that case, as in this one, the defendants maintained that the plaintiffs knew enough before filing to recognize that they were doomed to lose, but the district court disagreed and declined to award sanctions. In this case, as in Samuels, we hold that the decision of the district court was not an abuse of discretion.[7]
 
 
 31
 Sanctions are not appropriate when the plaintiffs' pretrial inquiries into the factual and legal bases of the complaint are sufficient. Kraemer v. Grant County, 892 F.2d 686, 689 (7th Cir.1990) (per curiam) (stating pretrial investigation into facts and law need merely be reasonable under the circumstances). The district court, recognizing the difficulty in proving conspiratorial agreement, did not abuse its discretion in concluding that the plaintiffs' claims were reasonable at that time and under those circumstances. See id. (recognizing difficulty in proving conspiracy); see also Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439, 446 (5th Cir.1992) (discussing difficulty in direct proof of conspiracy and suggesting courthouse door not be barred for those needing discovery for proof of allegations); McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1563 (11th Cir.1992) (finding claims may be meritless but not frivolous, given complexity of facts and legal issues involved). Cf. Neitzke v. Williams, 490 U.S. 319, 329, 109 S.Ct. 1827, 1834, 104 L.Ed.2d 338 (1989) (stating that "a finding of a failure to state a claim does not invariably mean that the claim is without arguable merit"). We agree that the plaintiffs' allegations, albeit ultimately failing, were not frivolous; the district court did not abuse its discretion in declining to sanction plaintiffs.[8]C. Denial of Attorneys' Fees
 
 
 32
 The County, as prevailing party in the summary judgment determination, requested attorneys' fees under 42 U.S.C. Sec. 1988 in addition to sanctions. The fees were denied along with the sanctions.
 
 
 33
 An award of fees under Sec. 1988 requires the following showing by the prevailing party:
 
 
 34
 In order to collect attorney's fees, a prevailing defendant "must demonstrate that the plaintiff brought her action in subjective bad faith, or that 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.' "
 
 
 35
 Leffler v. Meer, 936 F.2d 981, 986 (7th Cir.1991) (citations omitted). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." Id. at 986 (quoting Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980)).
 
 
 36
 The district court declined to find the complaint "meritless for purposes of Sec. 1988 fees." R. 304 at 11. As we have made clear in the sanctions discussion above, this is not a case in which the attorneys and parties have filed clearly wasteful or frivolous papers. Nor have they conducted an insufficient legal and factual investigation before filing meritless claims. Therefore, the district court did not abuse its discretion in denying attorneys' fees pursuant to Sec. 1988. See Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (holding a district court may in its discretion award attorney's fees upon a finding that plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith); Munson v. Milwaukee Bd. of Sch. Directors, 969 F.2d 266, 269 (7th Cir.1992) (discussing district courts' wide latitude to determine appropriateness of Sec. 1988 fee awards and appellate courts' limited role in reviewing discretionary decisions).
 
 Conclusion
 
 37
 For the foregoing reasons we hold that the district court's denial of Rule 11 sanctions and of Sec. 1988 prevailing party attorneys' fees did not constitute an abuse of discretion.
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 See LaSalle Nat'l Bank of Chicago v. County of DuPage, 856 F.2d 925 (7th Cir.1988), cert. denied, 489 U.S. 1081, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989); LaSalle Nat'l Bank of Chicago v. County of DuPage, 777 F.2d 377 (7th Cir.1985), cert. denied, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986)
 
 
 [2]
 After settling with the two village defendants, plaintiffs voluntarily dismissed their appeal of the district court's Order of March 15, 1991 that granted summary judgment to the defendants
 
 
 [3]
 The particular agreements alleged to have been made by defendants against plaintiffs concerned (1) regulations concerning sewer service; (2) denial of a special use zoning permit; (3) the setting of boundaries within which each government would determine whether to annex new development and to provide such utility services as water; and (4) geographical allocation of the available sewage capacity among the defendants
 
 
 [4]
 The County itself noted that the plaintiffs' state court case, pending when they filed their first complaint in federal court, involved the same defendants, many of the same facts, and "enabl[ed] them whatever pre-filing investigation they could have required or desired by way of discovery therein." Appellants' Reply Br. at 6 n. 4
 
 
 [5]
 In its Memorandum Opinion and Order of March 15, 1991, the district court granted both summary judgment and dismissal of the complaint under Rule 12(b)(6). R. 248. Plaintiffs' equal protection and due process claims were dismissed for failure to state a claim. The court called the equal protection claim a "non-starter," because the plaintiffs had not properly alleged disparate treatment resulting from class membership. The takings claim was dismissed for lack of subject matter jurisdiction; it was not ripe because plaintiffs did not state that they had sought and been denied compensation for their allegedly taken property. In the due process arena, the court pointed out that "[m]uch of what the defendants were about was expressly sanctioned by state law." R. 248 at 23. It concluded, with respect to substantive due process, that "plaintiffs have neither properly alleged a separate constitutional violation nor shown that there is a triable issue to present to a jury." R. 248 at 25. Similarly, in the area of procedural due process, the court suggested that any claim plaintiffs may have had should have been against the Illinois Environmental Protection Agency, which was not a party to the action and is immune from suit. Because the plaintiffs could prove no set of facts in support of their claims that would entitle them to relief, the district court dismissed the four counts of the amended complaint. The district court dealt with the conspiracy issue in a footnote: "Because of the legal inadequacies of the allegations, we need not reach the conspiracy question." R. 248 at 26 n. 11
 
 
 [6]
 See also Brubaker v. City of Richmond, 943 F.2d 1363, 1376 (4th Cir.1991) (noting that appellate court must consider whether signer's position was objectively reasonable at time complaint was filed, not whether district court's judgment on the merits was correct)
 
 
 [7]
 See Danvers v. Danvers, 959 F.2d 601, 604 (6th Cir.1992) (recognizing "action that could be properly dismissed for failure to state a claim, which nonetheless would not warrant the imposition of sanctions"); Brubaker, 943 F.2d at 1373 (holding Rule 11's factual inquiry requirement violated only when no factual basis for allegations)
 
 
 [8]
 Furthermore, the County did not argue that the plaintiffs should be sanctioned for other "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11. Rather, the County described the resultant increased cost to the taxpayers due to the persistence of plaintiffs' baseless allegations; and, in its reply brief, it argued that "plaintiffs should bear the financial burden of their malfeasance" of false allegations. County Reply Br. at 3. However, in its original petition for sanctions before the district court, the County conceded that it "has no direct evidence of an 'improper purpose' violation at this time." R. 270 at 3 n. 4. In fact, it did not argue or prove harassment or other improper purpose in the litigation